OPINION OF THE COURT
Andrew V. Siracuse, J.
This action is the second divorce action between the parties; the first was commenced over a year ago in Massachusetts, where the parties were then residing before moving to New York. The issue it presents is one of first impression in New York: does Massachusetts retain jurisdiction over custody issues raised in the prior action? Following the Parental Kidnaping Prevention Act (28 USC § 1738A) (P.K.P.A.), this court holds that the parties’ year-long absence from Massachusetts deprives that State of jurisdiction, although it originally had jurisdiction and might have continued to exercise jurisdiction but for the terms of that Act.
In April 1995 the plaintiff husband commenced a divorce action in Massachusetts, the State of residence at the time, by filing. He did not serve the defendant, and soon afterward the parties and their children, apparently hopeful of a reconciliation, moved to New York State.
When the husband filed this complaint, Massachusetts was the home State of the children and Massachusetts properly had jurisdiction over custody under both the Uniform Child Custody Jurisdiction Act (U.C.C.J.A.) and P.K.P.A. The parties have family connections with the Commonwealth and had lived in Massachusetts for most of their lives.
In July 1995, however, all parties involved moved to New York. The husband’s account is that the parties were attempting to reconcile, while the wife has submitted affidavits sup *89 porting a claim that she intended the move to be only temporary and thus came here without the intention necessary to establish domicile. Since the P.K.P.A. speaks only of residence, though, and not domicile, these subjective intentions are not relevant to home State questions.
The reconciliation was unsuccessful, and on July 19, 1996, the husband filed a divorce action in New York. On July 20, 1996, the wife left New York and returned to Massachusetts, taking the children with her. On July 22, 1996, this court signed an order to show cause directing return of the children pending a hearing. At that time the court was unaware of the Massachusetts action.
On July 24, 1996, the wife was served in Massachusetts with the New York summons and complaint and the order to show cause. On July 25, 1996, she moved for a temporary custody order in Massachusetts, based on the pending divorce action. That order was granted by Probate and Family Court the same day. A further temporary order was entered on September 4, 1996. By this time the wife had entered a limited appearance in New York for the purpose of contesting this court’s jurisdiction.
The husband seeks to excuse his failure to cite the Massachusetts divorce action in these New York papers, claiming that he thought the action had terminated because of his failure to serve. While under New York law failure to serve within 120 days of filing results in a case being "deemed dismissed” (CPLR 306-b), Massachusetts law is different. In that State the filing of an action vests the courts with jurisdiction, and failure to serve is not a jurisdictional error. Thus, the Massachusetts courts continue to have jurisdiction over the divorce even though the husband’s complaint was never served (see, Big D Carpets v Welch Group, 37 Mass App Ct 312, 639 NE2d 1085). Whether or not the husband had a good faith belief that the Massachusetts action had been abandoned, the New York court is without jurisdiction as to the divorce issues.
This case, though, turns on the connection between divorce jurisdiction and custody jurisdiction. At one time the two may have been inseparable; but the P.K.P.A., in particular, has placed these issues on different jurisdictional terrain.
Regardless of the status of the divorce action, New York was the home State of the children in July 1996; under the definition of "home State” in the U.C.C.J.A. and the P.K.P.A., Massachusetts could not become the home State for six months after the wife’s return. There would be no issue regarding this *90 court’s jurisdiction over custody but for the Massachusetts action.
Although its own laws and the terms of the U.C.C.J.A. may allow for the exercise of Massachusetts’s jurisdiction in this case, the P.K.P.A. takes precedence. According to the P.K.P.A., a State may make a custody determination if it has jurisdiction under its own laws and one of the following criteria is met:
"(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child’s home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
"(B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child’s present or future care, protection, training, and personal relationships;
"(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;
"(D) (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
"(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.” (28 USC § 1738A [c] [2].)
While the Foley family has strong and lengthy ties with Massachusetts, and considerable information about the children and their "present or future care, protection, training, and personal relationships” may be found in that State, jurisdiction under this branch of the Act is only available if "it appears that no other State would have jurisdiction under subparagraph (A)” — that is, if there is no "home State”. Thus, *91 Massachusetts cannot rely on subparagraph (B) to support its jurisdiction. (A similar problem arises with subparagraph [D].) Nor is there any claim of an emergency that would justify a determination on the basis of subparagraph (C).
Since it is not now the home State of the children, Massachusetts’s jurisdiction over custody stands or falls with the continuation of the jurisdiction it concededly had over the custody issues in April 1995, under subparagraph (E). But that section refers to the following: "(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c) (1) of this section continues to be met and such State remains the residence of the child or of any contestant.” (28 USC § 1738A [d].)
Following the rule of inclusio unius est exclusio alterius, the court interprets this section as providing that jurisdiction continues as long as any of the children or the contestants remains a resident of the State, but terminates when all of the parties have left the State.
A virtually identical case was decided in Alabama, Ex Parte Blanton (463 So 2d 162 [1985]), where an Alabama court reviewed a temporary custody order made in a Louisiana divorce action. The Supreme Court of Alabama held, "The record clearly shows that a complaint was filed in Louisiana and the record is completely devoid of any evidence which shows a dismissal or final adjudication in that action. Nevertheless, even though the divorce proceedings were pending under Louisiana law at the time Mrs. Blanton’s Mobile divorce proceeding was filed, they did not bar the Mobile court’s exercise of jurisdiction, because, at that time, the Louisiana court was no longer exercising jurisdiction consistently with the P.K.P.A.” (Supra, at 165.) The court reached this decision because all parties to the proceeding, along with the children, had left Louisiana; and "Under § 1738A (c) (2) (E), once jurisdiction was established in Louisiana under § 1738A (c) (1) and (2) it continued pursuant to § 1738A (d) 'as long as the requirement of subsection (c) (1) * * * continue[d] to be met and such State remain[ed] the residence of the child or of any contestant.’ (Emphasis added.) Thus, regardless of how long its jurisdiction continued under state law, the Louisiana court’s jurisdiction under the P.K.P.A. continued only as long as one of the Blanton children, Mrs. Blanton, or Mr. Blanton continued to reside there.” (Supra, at 167.) While Louisiana still had jurisdiction over the divorce proceeding, it had no jurisdiction under the *92 P.K.P.A. to adjudicate custody once the parties left the State. (Similarly see, Berger v Berger, 1994 WL 463650 [Conn Super Ct, Aug. 15, 1994, Thim, J.].)
The logic of Blanton (supra) is persuasive; absence from the State that originally had jurisdiction terminates that jurisdiction. Furthermore, the major difference between Blanton and the present case argues in the husband’s favor; in Blanton the Louisiana court had made a custody determination which the Alabama court modified, while here the Massachusetts court had done nothing until after the New York action was commenced. Indeed, the earlier action had at best a nominal existence until the wife returned to Massachusetts and seized on it to secure a custody order. The entire conduct of the parties in moving to another State and finding a job and an apartment suggests that the Massachusetts action had been abandoned in fact, if not in law.
This court does not find that the wife’s return to Massachusetts reinvests the Massachusetts court with custody jurisdiction. First of all, this interpretation would clearly frustrate the stated purpose of the Parental Kidnaping Prevention Act; it would be tantamount to allowing parents to kidnap their children as long as it was to a State which had previously been a home State. Moreover, 28 USC § 1738A (c) (1) allows actions to be brought in a State if "(A) such State * * * (ii) had been the child’s home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State”. (28 USC § 1738A [c] [2] [A] [emphasis added].)
Consistent with subsection (ii) the wife’s removal of the child from New York would not divest the New York courts of custody jurisdiction; this Act certainly cannot reinvest Massachusetts with home State status.
This court took steps to communicate with Judge Boorstein of the Probate and Family Court, and it is understood that Massachusetts will defer to New York in this matter. The limited appearance of the wife is thus converted into a general appearance, and the wife is given 20 days in which to reply to the order to show cause.
Massachusetts continues to have jurisdiction over the divorce, unless the Massachusetts divorce action is discontinued by the parties to allow divorce and custody to be determined together.